# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FIFTH THIRD BANK, NATIONAL ASSOCIATION, an Ohio banking corporation,<br><br>Plaintiff,<br><br>v.<br><br>BESSE FOREST PRODUCTS, INC., a Michigan corporation, BFP MANAGEMENT, INC., a Michigan corporation, WISCONSIN VENEER AND PLYWOOD, INC., a Wisconsin corporation, NORTHERN MICHIGAN VENEERS, INC., a Michigan corporation, and BESSE WOOD PRODUCTS, INC., a Wisconsin corporation<br><br>Defendants. | Case No.<br><br>Hon. |

## VERIFIED COMPLAINT

NOW COMES Fifth Third Bank, National Association ("*Plaintiff*"), by and through its attorneys McDonald Hopkins PLC, and for its complaint against Besse Forest Products, Inc. ("*Besse*"), BFP Management, Inc. ("*BFP*"), Wisconsin Veneer and Plywood, Inc. ("*WVP*"), Northern Michigan Veneers, Inc. ("*NMV*"), and Besse Wood Products, Inc. ("*BWP*") (Besse, BFP, WVP, NMV, and BWP will collectively be referred to as the "*Defendants*"), states as follows:

## INTRODUCTION

1. This Complaint is filed with consent of the Defendants for the appointment of Timothy Turek as Receiver over the Defendants. For the reasons discussed herein, and in the corresponding Motion for the Appointment of a Receiver filed contemporaneously with this

Complaint, Defendants request this Honorable Court grant Plaintiff's requested relief, as: (1) Defendants have materially breached the contract under the loan documents referenced in further detail below; (2) Defendants have consented to appointment of a receiver; (3) Defendants have ceased business operations and the value of Plaintiff's collateral under the applicable agreements will suffer substantial dissipation if a receiver is not appointed; (4) there is no other equitable remedies to provide the relief sought; and (5) the appointment of a receiver will prevent the further erosion of the collateral and will enable a qualified manager (who is already installed as the current Chief Restructuring Officer over Defendants), to protect the interests of Plaintiff and Defendants' other creditors.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff is a National Banking Association, which is a wholly-owned subsidiary of Fifth Third Bancorp, an Ohio banking corporation. Plaintiff's headquarters is located at 38 Fountain Square Plaza, Cincinnati, Ohio.

3. Upon information and belief, Besse is a Michigan corporation with its principal place of business located in Gladstone, Michigan.

4. Upon information and belief, BFP is a Michigan corporation with its principal place of business located in Gladstone, Michigan.

5. Upon information and belief, WVP is a Wisconsin corporation with its principal place of business located in Matoon, Wisconsin.

6. Upon information and belief, NMV is a Michigan corporation with its principal place of business located in Gladstone, Michigan.

7. Upon information and belief, BWP is a Wisconsin corporation with its principal place of business located in Matoon, Wisconsin.

8. The Court has personal jurisdiction because all Defendants conduct business in the State of Michigan.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (a) a substantial portion of the events and omissions giving rise to the claims arose in this district, and (b) a substantial portion of the property which is the basis for this action is situated in this district.

10. Additionally, pursuant to the applicable credit agreements, discussed in further detail below, Defendants agreed that they "CONSENT[ED] TO THE JURISDICTION OF ANY . . . FEDERAL COURT LOCATED WITHIN THE WESTERN DISTRICT OF MICHIGAN . . . ." **Exhibits 1,** ¶ 12.11, **Exhibit 2,** ¶ 12.11.

11. Defendants further agreed pursuant to the applicable security agreement, discussed in further detail below, that they "CONSENT[ED] AND AGREES THAT THE . . . FEDERAL COURTS LOCATED IN THE WESTERN DISTRICT OF THE STATE OF MICHIGAN, SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES," concerning the security agreement. **Exhibit 3,** ¶ 18.

12. This Court has original diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that this is a suit between citizens of different States and the amount in controversy exceeds $75,000.00.

13. Accordingly, venue and jurisdiction is appropriate in this Court to hear the issues contained herein.

## BACKGROUND REGARDING DEFENDANTS

14. Defendants own and operate lumber yards, sawmills and manufacturing facilities operating under the name Besse Forest Products Group.

3

34112337.2

15. Defendants are manufacturers of high quality Northern hardwood veneer, lumber, and specialty plywood for cabinets, doors, flooring, furniture, industrial pallets, millwork, musical instruments, railroad ties, sporting goods, wall panels, windows, and other wood products used worldwide. The Defendants' manufacturing operations include four veneer mills, four sawmills, one lumber drying concentration yard, and two plywood operations.

## BACKGROUND REGARDING THE LOANS

16. On or about September 28, 2018, Defendants, as borrowers, and Plaintiff, as lender, executed and delivered two credit agreements, along with associated other documents: (1) the "***Revolving Credit Agreement***," attached as **Exhibit 1**; and (2) the "Term Loan Credit Agreement," attached as **Exhibit 2**. The Revolving Credit Agreement and Term Loan Credit Agreement will collectively be referred to as the "***Credit Agreement***."[1] The Credit Agreement, along with the other documents executed in connection with or otherwise related to the Credit Agreement (as the same may from time to time be amended, restated or otherwise modified, collectively with the Credit Agreement), will be referred to as the "***Loan Documents***".

17. The Credit Agreement contain several material terms. Specifically, under the Revolving Credit Agreement, Defendants agreed:

> 9.1 <u>Events of Default.</u> The occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an "Event of Default" hereunder:
>
> …
>
>  (b) Any Loan Party fails or neglects to perform, keep or observe any of the … provisions set forth in Annexes B or F, respectively.

---

[1] Capitalized terms appearing herein that are not otherwise defined shall have the meanings ascribed to such terms in the Credit Agreement.

4

34112337.2

> (c) Any Loan Party fails or neglects to perform, keep or observe any of the . . . provisions set forth in Annexes D or E, respectively, and the same shall remain unremedied for 3 Business Days or more.

**Exhibit 1,** ¶ 9.1.

18. Under Annex F of the Revolving Credit Agreement (titled Financial Covenants), Defendants were required to maintain certain financial requirements, including a minimum EBITDA.

19. Under Annex D of the Revolving Credit Agreement, Defendants were required to deliver to Plaintiff certain monthly financial statements.

20. Under the Term Loan Credit Agreement, Defendants agreed:

> 9.1. <u>Events of Default.</u> The occurrence of any one or more of the following events (regardless of reason therefore) shall constitute an "Event of Default" hereunder:
>
> . . .
>
> > (c) Any Loan Party fails or neglects to perform, keep or observe any of the . . . provisions set forth in Annexes D or E, respectively, and the same shall remain unremedied for 3 Business Days or more.
>
> . . .
>
> > (e) A default or breach occurs under: (1) the documents related to the Revolving Loan
>
> **Exhibit 2,** ¶ 9.1.

21. Under Annex D of the Term Loan Credit Agreement, Defendants were required to deliver to Plaintiff certain monthly financial statements.

22. The Credit Agreement states that upon a continuing Event of Default, Plaintiff may declare the full amount of the loan due and payable. **Exhibit 1,** ¶ 9.2(b); **Exhibit 2,** ¶ 9.2(b).

23. The Credit Agreement further provides in Section 10.1 that each Defendant shall pay Plaintiff's reasonable attorney's fees and disbursements incurred in connection with the Loan Documents, including with respect to enforcement. **Exhibit 1**, ¶ 10.1; **Exhibit 2**, ¶ 10.1.

24. Defendants executed a secured Revolving Note in favor of Plaintiff, related to the Revolving Credit Agreement. **Exhibit 4**.

25. Defendants executed a secured Real Estate Term Loan Note (the "***Term Note***") in favor of Plaintiff related to the Term Loan Credit Agreement. **Exhibit 5**.

26. The Revolving Note and Real Estate Term Loan Note will be referred herein as the "***Notes***."

27. Additionally, to secure Defendants' obligations under the Credit Agreement, on September 28, 2018, Defendants executed a Security Agreement (the "***Security Agreement***"). **Exhibit 3**. Therein, the Security Agreement specifies that:

> Grant. To secure the prompt and complete payment, performance and observance of all of the Obligations, each Grantor hereby grants to Lender a Lien upon and security interest in all of its right, title and interest in, to and under the following personal property of such Grantor, whether now owned by or owing to, or hereafter acquired by or arising in favor of, such Grantor (including under any trade names, styles or derivations thereof), and whether owned by or consigned by or to, or leased from or to, such Grantor, and regardless of where located (all of which being hereinafter collectively referred to as the "Collateral"), including: (i) all Accounts; (ii) all Chattel Paper; (iii) all Contracts; (iv) all Deposit Accounts, including all Blocked Accounts, Concentration Accounts, Disbursement Accounts, and all other bank accounts and all funds on deposit therein; (v) all Documents; (vi) all Farm Products; (vii) all General Intangibles (including payment intangibles and Software); (viii) all Goods (including Equipment, Fixtures and Inventory); (ix) all Instruments; (x) all Investment Property; (xi) all Letter of Credit Rights; (xii) all money, cash or cash equivalents; (xiii) all Supporting Obligations; (xiv) all Commercial Tort Claims; and (xv) to the extent not otherwise included in the foregoing, all Proceeds, products, tort claims, insurance claims and other rights to payment and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing.

**Exhibit 3**, ¶ 2(a).

28. The Security Agreement also specifies that it created a lien upon the Collateral in Plaintiff's favor. **Exhibit 3**, ¶ 4(c).

29. The Security Agreement further provides in Section 7 that upon the occurrence of, and during the continuance of an Event of Default, Plaintiff may, among other things, take possession of the Property or the Collateral, or any of them, and Plaintiff "may, if it so elects, seek the appointment of a receiver or keeper to take possession of Collateral and to enforce any of Lender's remedies, without, except as may be required by applicable state laws, prior notice or hearing as to such appointment." **Exhibit 3**, ¶ 7.

30. In accordance with Plaintiff's rights, on or about October 1, 2018, Plaintiff properly filed UCC-1 financing statements with the applicable Michigan and Wisconsin Secretaries of State related to each of the Defendants. *See* **Exhibit 6.**

31. Plaintiff holds a properly perfected security interest in substantially all of the property interests in Defendants.

32. To further secure Defendants interest under the Credit Agreement, as well as the applicable Notes, Defendants executed mortgages of certain real property specified therein, in Plaintiff's favor (the "***Mortgages***"). *See* **Exhibit 7-A, Exhibit 7-B, Exhibit 7-C, Exhibit 7-D,** and **Exhibit 7-E, Exhibit 7-F**.

33. Each of the Mortgages provides in Section 27 that, upon a breach, Plaintiff shall be entitled to the appointment of a receiver of the Property and the rents and benefits thereof, and that the Mortgagor "expressly consents to the appointment of such receiver." *See* **Exhibit 7-A,** ¶ 27, **Exhibit 7-B,** ¶ 27, **Exhibit 7-C,** ¶ 27, **Exhibit 7-D,** ¶ 27, and **Exhibit 7-E,** ¶ 27, **Exhibit 7-F,** ¶ 27.

34. Defendants' real estate that is covered by the Mortgages is located at:

      (a) 38 E Messenger St, Rice Lake, WI 54868;
      (b) 200 C Ave, Goodman, WI 54125;
      (c) 610 Railroad Street, Mattoon, WI 54450;
      (d) 401 Gustafson Road, Ladysmith, WI 54848; and
      (e) 710 Rains Drive, Gladstone, MI 49837.

<u>Leasehold Interests</u>:
(f) 16522 Westland Dr., Baraga, MI 49908.

*See* **Exhibit 7-A, Exhibit 7-B, Exhibit 7-C, Exhibit 7-D,** and **Exhibit 7-E, Exhibit 7-F**.

35. The Credit Agreement was amended on multiple occasions since it was originally executed.

36. In the Fourth Amendment to the Revolving Credit Agreement, dated March 7, 2024, Defendants agreed to a minimum EBITDA, requiring Defendants to "have on a consolidated basis EBITDA for the 2-month period ending as of February 29, 2024 of not less than $0.00." **Exhibit 8, ¶ 8.**

## **DEFAULT UNDER THE LOAN DOCUMENTS**

37. Defendants were not immune to declining net cash flows and the impact of rising operating costs.

38. Defendants defaulted under the terms of the Loan Documents and their applicable amendments.

39. Specifically, the following Events of Default (as defined under the Credit Agreement) have occurred and are continuing under the Credit Agreement: (a) an Event of Default under Section 9.1(b) of the Revolving Credit Agreement occurred by virtue of Defendants failing to comply with Annex F of the Revolving Credit Agreement (Financial Covenants) due to their failure to maintain the required EBITDA for the 2-month period ending

8

as of February 29, 2024; (b) an Event of Default under Section 9.1(c) of the Revolving Loan Credit Agreement occurred by virtue of Defendants failing to comply with Annex D of the Revolving Loan Credit Agreement (Monthly Financials) due to their failure to deliver to Plaintiff monthly financial statements of Defendants for the Fiscal Month ending February 29, 2024 within 30 days of the end of such Fiscal Month; (c) an Event of Default under Section 9.1(c) of the Term Loan Credit Agreement occurred by virtue of Defendants failing to comply with Annex D of the Term Loan Credit Agreement (Monthly Financials) due to their failure to deliver to Plaintiff monthly financial statements of Defendants for the Fiscal Month ending February 29, 2024 within 30 days of the end of such Fiscal Month; and (d) an Event of Default under Section 9.1(e) of the Term Loan Credit Agreement occurred by virtue of Defendants failing to comply with Annex F of the Revolving Loan Credit Agreement (Financial Covenants) due to their failure to maintain the required EBITDA for the 2-month period ending as of February 29, 2024 (collectively, the "*Defaults*")

40. On April 23, 2024, Plaintiff delivered to the Defendants a Notice of Default and Reservations of Rights in respect of the Loan Documents. The letter specified that the above stated Defaults had occurred and Plaintiff was entitled to all rights and remedies as specified in the Loan Documents and their amendments. **Exhibit 9.**

41. In lieu of Plaintiff executing on its right to pursue such remedies, on or about May 17, 2024, Defendants entered into two forbearance agreements related to the Revolving Credit Agreement and Term Loan Credit Agreement (the "*First Forbearance Agreement*"), wherein Defendants acknowledged the Defaults, providing:

> 7. **Acknowledgement of Default** [Defendants] acknowledge and agree that (a) the [Defaults have] occurred and is existing under the Loan Documents as of the date of this Agreement and (b) [Plaintiff] is entitled to take all actions legally

9

available to it under the Credit Agreement and other Loan Documents or applicable law upon the occurrence of an event of default without any further or additional notice to [Defendants] subject to the terms of this Agreement.

**Exhibit 10, ¶ 7, Exhibit 11, ¶ 7.**

42. The First Forbearance Agreement expired on or about July 17, 2024. **Exhibit 10, ¶ 1; Exhibit 11, ¶ 1.**

43. On or about July 19, 2024, the Plaintiff and Defendants executed the First Amendment to Forbearance Agreement (the "***First Amended Forbearance Agreement***"), which expired on or about August 2, 2024. **Exhibit 12, ¶ 1.**

44. The First Amended Forbearance Agreement specified that Defendants would "engage Aurora Management Partners Inc." as a consultant on financial issues and continue to provide Plaintiff with required financial information. **Exhibit 12, ¶ 2.**

45. Defendants further specified and agreed in the First Amended Forbearance Agreement that:

> (a) the [Defaults] constitute Events of Default under the Credit Agreement, thereby entitling Lender to accelerate and demand the immediate payment of all of the indebtedness owing by Borrowers to Lender under the Loan Documents;
>
> (b) by virtue of the Credit Agreement and certain other agreements, documents and instruments, including certain UCC-1 financing statements, Lender has a perfected, first priority security interest in and/or lien on the Collateral as collateral security for any and all obligations of Borrowers to Lender, including, but not limited to, the Indebtedness owing by Borrowers to Lender under the Loan Documents;
>
> (c) as of the First Amendment Effective Date, the outstanding principal balance of the Revolving Note equals $13,034,795.01 and the Term Note is $3,593,672.71, plus certain costs and expenses, including but not limited to attorneys' fees; and
>
> (d) Lender has no existing commitments, obligations or agreements to advance credit or loans or to make financial or other accommodations to Borrowers except as specifically set forth in this First Amendment and the Forbearance Agreement.

**Exhibit 12, ¶ 4.**

34112337.2

46. Through the First Amended Forbearance Agreement, Defendants additionally agreed to pay Plaintiff's "costs and expenses incurred in connection with the Loan Documents, this First Amendment or the exercise of [Plaintiff's] rights hereunder or thereunder." **Exhibit 12, ¶ 12.**

47. Based on financial information provided by representatives of the Defendants to Plaintiff, on a simple balance sheet basis, the Defendants do not generate sufficient cash flow to pay all necessary operating expenses.

48. Given the Defendants' continuing operational losses, combined with current market conditions in the industry and the broader economy, the Defendants ceased business operations on August 2, 2024, except for the kiln business which ceased operations two weeks later.

49. Thus, Defendants are unable to pay the total due to Plaintiff under the Loan Agreements.

50. Each Defendant has advised Plaintiff that, due to the unavailability of cash flow from their business operations, they cannot make any further payments under the Loan Agreements.

51. Defendants have also stated that they consent to the appointment of a receiver as soon as possible.

52. Each of the Defendants have specifically consented to the appointment of Timothy Turek as the receiver.

53. Mr. Turek is an employee of Aurora Management Partners Inc., who, under the Amended Forbearance Agreement, is the Chief Restructuring Officer of Defendants' business.

34112337.2

54. As of August 30, 2024, the outstanding principal balance of the Revolving Note equals $12,243,479.01, which includes a $150,000.00 letter of credit, and the Term Note is $3,568,888.76, plus certain costs and expenses, including but not limited to attorneys' fees.

55. Defendants are in default under the Loan Documents, and thus Plaintiff is entitled to the relief sought herein.

56. In further support of these facts and authenticity of the documents attached hereto, Plaintiff attaches the Declaration of William Stapel as **Exhibit 13** to this Complaint.

## COUNT ONE:
## BREACH OF CONTRACT UNDER THE LOAN DOCUMENTS

57. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

58. The Loan Documents, including, without limitation, Credit Agreement, Security Agreement, Mortgages, the Term Note, Revolving Note, the Forbearance Agreement, and Amended Forbearance Agreement are valid contracts between the Plaintiff and Defendants.

59. Pursuant to the Credit Agreement, the amounts due under the Notes are due and owing as a result of the occurrence of certain Events of Default under the terms of the Loan Documents.

60. Defendants have admitted to the Defaults under the Loan Documents.

61. Defendants have thereby breached the Loan Documents.

62. As a result of Defendants' breach, Plaintiff has been damaged and is entitled to the outstanding principal balance, plus certain costs and expenses (including attorneys' fees), which as of August 30, 2024, amount to $12,243,479.01 on the Revolving Note and $3,568,888.76 on the Term Note, plus certain costs and expenses.

63. Defendants' obligations arising under the Loan Documents are secured by valid, binding, properly perfected first-priority liens on and security interests all Defendants' real and personal property of any kind as described in the Loan Documents.

## COUNT TWO:
## APPOINTMENT OF A RECEIVER

64. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

65. Defendants have consented to the appointment of a receiver, as specified above, in the Security Agreement, as well as in the Mortgages.

66. Defendants have additionally consented to appointment of a receiver contemporaneously with the filing of this Verified Complaint.

67. Each of the Defendants consent to the appointment of Timothy Turek as receiver.

68. Even if Defendants had not consented to the appointment of a receiver, good cause exists for such appointment.

69. Plaintiff is of the good faith belief that Defendants are without the resources to preserve Collateral as required by the Loan Documents described above, and therefore, the value of Plaintiff's Collateral is jeopardized and in immediate danger of further deterioration.

70. Plaintiff is entitled to have the receiver appointed as a matter of equity to protect it from injury and to ensure that its Collateral is sold or otherwise liquidated and all proceeds are remitted directly to Plaintiff until all Obligations owed to Plaintiff from the Defendants are paid in full.

71. By reason of the foregoing, Plaintiff is at risk of immediate and irreparable injury,

34112337.2

loss and damage to its Collateral unless a receiver is appointed in this case.

72. The financial condition of Defendants and their inability to preserve the Collateral jeopardizes Plaintiff's secured priority position. The appointment of a receiver is necessary to preserve, protect, and maintain the value of Plaintiff's interests in the Collateral and to maximize the value of the Defendants' businesses.

73. Plaintiff requests that the Court enter an order (a) appointing a receiver of the Collateral, together with all of the other real and personal property arising out of, or pertaining to the Defendants' business operations during the pendency of this action and (b) requiring all persons who have possession or control of the Collateral or other real and personal property arising out of, or pertaining to the Defendants' business operations, to yield and deliver possession of the same to the receiver appointed by the Court.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment that:

A. Determines and awards to Plaintiff the amount due to the Plaintiff by Defendants pursuant to the Loan Documents;

B. $12,243,479.01 on the Revolving Note and $3,568,888.76 on the Term Note, plus certain costs, interest, and expenses, plus attorneys' fees, and all other accrued amounts under the Loan Documents;

C. Orders and enjoins Defendants and their agents from damaging, destroying, concealing, disposing of or dissipating the value of the property constituting the Collateral of the Plaintiff;

D. Orders Plaintiff its costs, including reasonable attorneys' fees and expenses authorized under the Loan Documents;

14

E. Orders the immediate appointment of a receiver to take charge of, manage, preserve, protect and oversee the assets and business operations of the Defendants, and to apply the net proceeds derived therefrom to the amounts owed Plaintiff and to other creditors in the proper order of priority of their respective claims based upon applicable law; and

F. Grants such other relief as this Court deems equitable and just.

Dated: September 5, 2024

Respectfully submitted,

MCDONALD HOPKINS PLC
By:/s/ Mark W. Steiner
MICHAEL G. LATIFF (P51263)
MARK W. STEINER (P78817)
39533 Woodward Avenue, Ste. 318
Bloomfield Hills, MI 48304
(248) 220-1351 / Fax: (248) 646-5075
mlatiff@mcdonaldhopkins.com
msteiner@mcdonaldhopkins.com

-and-

SCOTT N. OPINCAR (0064027)
McDonald Hopkins LLC
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Email: sopincar@mcdonaldhopkins.com
(Admitted to Practice Before This Court)

*Attorneys for Plaintiff*

34112337.2

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Executed on September 5, 2024.

Name: William Stapel
Title: Managing Director, Fifth Third Bank